# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| DES-CASE CORPORATION, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:17-cv-01239 |
| | ) | |
| MADISON INDUSTRIES HOLDINGS | ) | JUDGE CAMPBELL |
| LLC, et al., | ) | MAGISTRATE JUDGE BROWN |
| | ) | |
|     Defendants. | ) | |

## **MEMORANDUM AND ORDER**

### I. Introduction

Pending before the Court are Defendants Madison Industries And Todd Technologies' Motion To Transfer (Doc. No. 42), Plaintiff's Response (Doc. No. 64), and Defendants' Reply (Doc. No. 68).[1] Through a Notice Of Joinder (Doc. No. 67), Defendant Filtration Group Corporation has joined in the Motion To Transfer.

For the reasons set forth below, Defendants' Motion To Transfer (Doc. No. 42) is **GRANTED**. Accordingly, this action is TRANSFERRED to the District Court for the District of Delaware.

### II. Factual and Procedural Background

Through its Second Amended Complaint, Plaintiff Des-Case Corporation, a Tennessee corporation with its principal place of business in Goodlettsville, Tennessee, names as Defendants Madison Industries Holdings LLC, Filtration Group Corporation, and Todd

---

[1] The Court commends counsel for both parties for providing well-written and concise briefs on the relevant issues.

Technologies Inc. LLC. (Doc. No. 66, at ¶¶ 1-4). Plaintiff alleges that, in 2014, Defendant Madison Industries explored the prospect of buying an interest in Plaintiff, but Plaintiff's majority owner at the time, Pfingsten Partners, was not interested in the offer and negotiations ended. (*Id.*, at ¶ 10). According to Plaintiff, in late 2015 or early 2016, Pfingsten Partners explored an interest in selling Plaintiff and hired Craig-Hallum Capital Group LLC ("Craig-Hallum") to explore the sale of the company and recruit bidders. (*Id.*, at ¶ 11). The proposed sale was known by the code name "Project Purify." (*Id.*) On February 22, 2016, Plaintiff alleges, Craig-Hallum entered into a Confidentiality and Non-Disclosure Agreement ("NDA") with Defendant Madison Industries. (*Id.*, at ¶ 13). Plaintiff further alleges that the NDA:

> . . . provided that Craig-Hallum and Des-Case would share extensive confidential information about 'Purify' or Des-Case for the sole purpose of allowing Madison Industries to determine if they wanted to purchase Des-Case. Des-Case was a third-party beneficiary of the NDA, which is attached to this Complaint as Exhibit A, but was not a signatory to it.

(*Id.*, at ¶ 13).

According to Plaintiff, Craig-Hallum shared Des-Case confidential information and trade secrets with Defendant Madison Industries, as well as Madison's representative, Defendant Filtration Group. (*Id.*, at ¶¶ 16-20). Plaintiff alleges that Defendant Madison Industries subsequently made a purchase bid for the company that was unsuccessful. (*Id.*, at ¶ 22). Plaintiff contends that Defendants Madison Industries and Filtration Group then used Plaintiff's confidential information to design and market a competing line of products, and formed Defendant Todd Technologies for that purpose. (*Id.*, at ¶ 23). Plaintiff alleges that Defendants are also contacting Plaintiff's customers in an effort to sell these products. (*Id.*, at ¶¶ 35-38).

Plaintiff raises the following claims: (1) breach of contract against Defendant Madison Industries; (2) civil conspiracy against all Defendants; (3) intentional interference with business relationships and/or prospective business advantage against all Defendants; (4) unfair competition under the Lanham Act against all Defendants; (5) common law unfair competition against all Defendants; (6) violation of the Tennessee Uniform Trade Secrets Act against all Defendants; (7) breach of the Defend Trade Secrets Act against all Defendants; and (8) violation of the Tennessee Consumer Protection Act against all Defendants. (Doc. No. 66).

III. Analysis

Defendants argue that this case should be transferred to Delaware, pursuant to 28 U.S.C. § 1404(a), based on a provision of the NDA. Plaintiff argues, on the other hand, that neither the provision nor Section 1404 supports Defendants' transfer request.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In ruling on a motion to transfer venue, a court typically considers factors relating to the convenience of the parties and the public interest. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013). Factors relating to the convenience of the parties include the relative ease of access to sources of proof; availability of compulsory process for attendance of witnesses and the cost of obtaining attendance of willing witnesses; and the possibility of a view of the premises, if relevant. 134 S.Ct. at 581 n.6. Factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having a trial of a diversity case in a forum at home with

the law that will be applied. *Id. See also Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016).

When the parties have entered into an agreement that contains a valid forum-selection clause, "[t]he calculus changes." *Atl. Marine Const.*, 134 S.Ct. at 581. The district courts are to adjust the usual Section 1404(a) analysis by considering arguments about public-interest factors only, and by giving no weight to the plaintiff's choice of forum. *Id.*, at 582. In addition, although the moving party generally bears the burden of demonstrating that transfer is warranted, a party acting in violation of a valid forum-selection clause bears the burden of showing that public-interest factors "overwhelmingly disfavor a transfer." *Id.*, at 583; s*ee also Means*, 836 F.3d at 652 n.7.

In this case, Defendants rely on the following provision of the NDA to support their transfer request:

> **10. Choice of Law & Venue.** Any dispute or controversy arising out of or relating to this Agreement shall be governed by Delaware law, without application of conflicts of law principles, and the Receiving Party agrees to the exclusive jurisdiction of the courts located in the State of Delaware.

(Doc. No. 66-1, at 4). The NDA identifies the "Receiving Party" as Madison Industries. (*Id.*, at 2, 5). The first paragraph of the NDA states that the "Receiving Party" has requested certain confidential information to evaluate a potential business transaction with the "Disclosing Party." (*Id.*, at 2). The "Disclosing Party" is not identified by name, but is described as being a "client" of Craig-Hallum. (*Id.*) "As a condition to furnishing such Confidential Information," the agreement continues, "the Disclosing Party has required that the Receiving Party execute this Confidentiality and Non-Disclosure Agreement. . . " (*Id.*) The last page of the agreement states: "IN WITNESS WHEREOF, the undersigned has

executed this Agreement for the benefit of Disclosing Party . . . ," and is signed by a representative of Madison Industries. (*Id.,* at 5).

Plaintiff contends that it disclosed confidential information to Defendant Madison Industries pursuant to the terms of the NDA, and thus, has standing as a third-party beneficiary to recover damages and other relief for breach of the agreement. Citing *Perez v. Arch Ins. Co. (Europe), Ltd,* 2014 WL 11906639, at *3 (S.D. Fla. Feb. 5, 2015), the parties agree that "[t]hird-party beneficiaries stand in the shoes of the promisee and are subject to the terms and conditions of the contract they seek to invoke." The parties also agree that for a third-party beneficiary to be bound by a forum-selection clause, it must be "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound" by the clause. *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997).

The Court concludes that Plaintiff should be bound to the forum-selection clause under this standard. First, Plaintiff 's agent, Craig-Hallum, represented the Plaintiff as the "Disclosing Party" in requiring that Madison Industries execute the NDA before receiving confidential information about the Plaintiff. Indeed, the first paragraph of the agreement reflects this agency relationship by identifying the "Disclosing Party" as a "client" of Craig-Hallum. Moreover, the NDA was created "for the benefit of the Disclosing Party," the Plaintiff, and on that basis, Plaintiff now seeks damages for its alleged breach. Thus, Plaintiff is appropriately bound to the terms of the NDA, and its forum-selection clause, as a third-party beneficiary. *See Regions Bank v. Wyndham Hotel Management, Inc.*, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010) (explaining that a non-signatory party is sufficiently "closely related" to the dispute if the party had an agency relationship with one of the signing parties, or directly benefitted from the agreement).

Plaintiff argues, however, that even if it is bound to the terms of the NDA, Paragraph 10 of the NDA is not an enforceable, bilateral forum-selection clause. Plaintiff contends that the provision merely identifies the choice of law for disputes and does not indicate the venue for disputes. Plaintiff also points out that the provision does not use the word "shall." In Plaintiff's view, the provision should be interpreted as merely indicating Defendant Madison Industries' consent to jurisdiction in Delaware, and does not specifically bind any party other than Madison Industries. In so arguing, Plaintiff does not challenge the enforceability of the provision in its entirety, but instead invites the Court to accept Plaintiff's interpretation of that provision.

In construing the language of a forum-selection clause, the court is to read the provision "as a whole" and give it "its ordinary and natural meaning.'" *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 466 (6th Cir. 2009). Applying those principles here, the Court concludes that the provision is a valid and enforceable forum-selection clause. Paragraph 10 is titled "Choice of Law & Venue," and a reasonable reading of the provision clearly indicates that the parties intended to select Delaware as the "venue" for disputes arising out of the agreement, as well as the choice of law for disputes. As for the absence of the word "shall," Plaintiff has failed to cite authority indicating that a forum-selection clause must use that term in order to be valid.

Plaintiff's argument that the clause only binds Madison Industries is belied by the expansive language of Paragraph 10, which begins with the phrase "[a]ny dispute or controversy arising out of or relating to this Agreement" and provides for "exclusive jurisdiction" of Delaware courts. The provision does not merely state that Madison Industries "consents" to the jurisdiction of Delaware courts, but that it "agrees" to the exclusive

jurisdiction of Delaware courts, implying the additional consent of another party. Plaintiff's strained interpretation would bind both Craig-Hallum (and presumably Plaintiff) and Madison Industries to application of Delaware law in litigation arising out of any dispute relating to the agreement, but would permit Craig-Hallum to bring an action to enforce the agreement in courts outside Delaware, while limiting Madison Industries to the "exclusive jurisdiction" of the courts in Delaware.

The Court is not persuaded that the parties intended such a tortured interpretation, especially given that Madison Industries is a Delaware limited liability company, and its "consent" to jurisdiction would presumably be unnecessary. (Verified Second Amended Complaint, at § 2 (Doc. No. 66)). To the extent there is any ambiguity in the language on this point, however, that ambiguity is construed against the party that drafted the agreement, Plaintiff's agent, Craig-Hallum. *See, e.g., Organizational Strategies, Inc. v. Feldman Law Firm LLP,* 15 F. Supp. 3d 527, 530 (D. Del. 2014).

The cases cited by Plaintiff to support its argument do not address the circumstances presented here. In *Answers in Genesis of Kentucky, Inc.,* 556 F.3d at 465, the clause at issue provided for the "*non-exclusive* jurisdiction" of the courts of the State of Victoria, Australia. In *EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 346 (6th Cir. May 22, 2008), the court determined that a forum-selection provision did not prevent the defendants from *removing* the case from state to federal court in the same state, because the provision did not address removal. In this case, the issue is not whether the clause prevents Defendants from removing the case from state to federal court in Tennessee, but whether the clause requires Plaintiff to litigate in Delaware rather than Tennessee.

Plaintiff alternatively argues that the forum-selection clause is not broad enough to cover the tort claims brought in this case. As a general rule, "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Gen. Envtl. Sci. Corp. v. Horsfall*, 25 F.3d 1048 (Table), 1994 WL 228256, at *8 (6th Cir. 1994) (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993)). In this case, Plaintiff's first claim is for breach of the NDA, and six of the seven other claims reference the NDA and/or the improper use of the confidential information Defendants allegedly obtained through the NDA. By contrast, in the cases cited by Plaintiff in support, the plaintiffs did not pursue claims to enforce or interpret the contract containing the forum-selection clause, but focused instead on claims arising under federal and state statutes and state common law that did not depend on enforcement or interpretation of the contract. *See Gen. Envtl. Sci. Corp. v. Horsfall*, *supra*; *Fagan v. Fischer*, 2015 WL 4321989 (D. N.J. July 14, 2015). The Court is persuaded that the forum-selection clause in this case is broad enough to cover the claims raised by Plaintiff.

Having determined that Paragraph 10 of the NDA is a valid forum-selection clause binding the parties and is broad enough to apply to Plaintiff's claims, the Court must consider whether Plaintiff has satisfied its burden of showing that public-interest factors "overwhelmingly disfavor a transfer." *Atl. Marine Const.*, 134 S.Ct. at 583. As set forth above, factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having a trial of a diversity case in a forum at home with the law that will be applied. *Id.* at 581 n. 6.

Plaintiff argues that it is not in the public interest to grant Defendants' request to transfer because Defendants have engaged in "gamesmanship" in this litigation. Specifically, Plaintiff contends that "it is against the public interest to countenance the deliberate gamesmanship exhibited by Todd Technologies' efforts to remove itself from Colorado and establish jurisdiction over itself in Delaware after allowing Plaintiff's amendment deadline to expire." (Doc. No. 64, at 14). For its part, Defendant Todd Technologies has filed the affidavit of its President, Todd A. Younggreen, stating that the company was incorporated in Delaware before this litigation began, and that it inadvertently filed incorporation forms in Colorado, rather than the forms for registering as a foreign entity. (Doc. No. 43-1). That error has now been corrected. (Doc. No. 64-1). Plaintiff also points to Defendants' delay in identifying Defendant Filtration Group Corporation, rather than Filtration Group LLC, as the appropriately-named defendant. In response, Defendants represent that they put Plaintiff on notice early on in this litigation as to the proper defendant. The Court is not persuaded that these disputes among the parties weigh against transfer.

Additionally, Plaintiff argues that transfer would result in a multiplicity of litigation in different districts because Todd Technologies is not bound by the NDA. The prospect of multiple lawsuits appears unlikely, however, as all three defendants have indicated their support for transferring this case to Delaware. (Doc. No. 67). Thus, this factor does not weigh against transfer.

For their part, Defendants argue that transfer is appropriate because the courts in this District are congested. Plaintiff disputes that characterization. The Court is not persuaded that either party has shown that this factor significantly favors either side in this analysis.

Defendants also point out, and the Court agrees, that the desirability of having a Delaware court apply Delaware law, as required by the NDA, in deciding the issues in this case favors transfer.

Having considered the public-interest factors, therefore, the Court finds that Plaintiff has failed to meet its burden of showing that the factors overwhelmingly disfavor a transfer. Thus, pursuant to Section 1404(a), the Court concludes that this case should be transferred to the District Court for the District of Delaware.

IV. Conclusion

For the reasons set forth herein, Defendant's Motion To Transfer (Doc. No. 42) is granted, and this case is transferred to the District Court for the District of Delaware.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE